1

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT

9                      FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   PETER HONESTO,                          No.  2:15-cv-0076 AC P

12              Plaintiff,

13        v.                                 ORDER and

14   GOVERNOR JERRY BROWN, et al.,           FINDINGS AND RECOMMENDATIONS

15              Defendants.

16

17        I.      Introduction

18        Plaintiff is a state prisoner currently incarcerated at Chuckawalla Valley State Prison in

19   Blythe (Riverside County), under the authority of the California Department of Corrections and

20   Rehabilitation (CDCR).  Plaintiff proceeds pro se with a civil rights complaint filed pursuant to

21   42 U.S.C. § 1983, and request to proceed in forma pauperis pursuant to 28 U.S.C. § 1915.  This

22   action is referred to the undersigned United States Magistrate Judge pursuant to 28 U.S.C. §

23   636(b)(1)(B), and Local Rule 302(c).

24        For the reasons set forth below, the court grants petitioner's request to proceed in forma

25   pauperis; screens plaintiff's complaint pursuant to 28 U.S.C. § 1915A; notifies plaintiff of the

26   deficiencies in his complaint; and dismisses the complaint with leave to file a First Amended

27   Complaint.  The court grants in part and denies in part plaintiff's motion to submit additional

28   evidence and add parties.  Finally, the undersigned recommends to the district judge that

                                                1

1   plaintiff's request for preliminary injunctive relief be denied.

2       II.      In Forma Pauperis Application

3       Plaintiff has submitted a declaration that makes the showing required by 28 U.S.C. §

4   1915(a).  Accordingly, plaintiff's request to proceed in forma pauperis, ECF No. 6, will be

5   granted.

6       Plaintiff is still required to pay the statutory filing fee of $350.00 for this action.  See 28

7   U.S.C. §§ 1914(a), 1915(b)(1).  By this order, plaintiff will be assessed an initial partial filing fee

8   in accordance with the provisions of 28 U.S.C. § 1915(b)(1).  By separate order, the court will

9   direct the appropriate agency to collect the initial partial filing fee from plaintiff's trust account

10  and forward it to the Clerk of the Court.  Thereafter, plaintiff will be obligated for monthly

11  payments of twenty percent of the preceding month's income credited to plaintiff's prison trust

12  account.  These payments will be forwarded by the appropriate agency to the Clerk of the Court

13  each time the amount in plaintiff's account exceeds $10.00, until the filing fee is paid in full.  28

14  U.S.C. § 1915(b)(2).

15      III.     Legal Standards For Screening Prisoner Complaints Under 28 U.S.C. § 1915A

16      The court is required to screen complaints brought by prisoners seeking relief against a

17  governmental entity or officer or employee of a governmental entity.  28 U.S.C. § 1915A(a).  The

18  court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally

19  "frivolous or malicious," fail to state a claim upon which relief may be granted, or seek monetary

20  relief from a defendant who is immune from such relief.  28 U.S.C. § 1915A(b)(1),(2).

21      A claim is legally frivolous when it lacks an arguable basis either in law or in fact.

22  Neitzke v. Williams, 490 U.S. 319, 325 (1989); Franklin v. Murphy, 745 F.2d 1221, 1227-28 (9th

23  Cir. 1984).  The court may dismiss a claim as frivolous when it is based on an indisputably

24  meritless legal theory or where the factual contentions are clearly baseless.  Neitzke, 490 U.S. at

25  327.  The critical inquiry is whether a constitutional claim, however inartfully pled, has an

26  arguable legal and factual basis.

27      A district court must construe a pro se pleading liberally to determine if it states a

28  potentially cognizable claim.  The court must explain to the plaintiff any deficiencies in his

2

1    complaint and accord plaintiff an opportunity to cure them.  See Lopez v. Smith, 203 F.3d 1122,

2    1130-31 (9th Cir. 2000).  While detailed factual allegations are not required, "[t]hreadbare recitals

3    of the elements of a cause of action, supported by mere conclusory statements, do not suffice."

4    Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atlantic Corporation  v. Twombly, 550

5    U.S. 544, 555 (2007)).  Plaintiff must set forth "sufficient factual matter, accepted as true, to

6    'state a claim to relief that is plausible on its face.'" Iqbal, 556 U.S. at 678 (quoting Twombly,

7    550 U.S. at 570).  "While legal conclusions can provide the framework of a complaint, they must

8    be supported by factual allegations." Id. at 679.  Rule 8 of the Federal Rules of Civil Procedure

9    "requires only a short and plain statement of the claim showing that the pleader is entitled to

10    relief, in order to give the defendant fair notice of what the claim is and the grounds upon which it

11    rests." Twombly, 550 U.S. at 555 (citation and internal quotation and punctuation marks

12    omitted).

13       A pro se litigant is entitled to notice of the deficiencies in the complaint and an

14    opportunity to amend, unless the complaint's deficiencies cannot be cured by amendment.  See

15    Noll v. Carlson, 809 F.2d 1446, 1448 (9th Cir. 1987).

16       IV.     Screening Plaintiff's Complaint Under 28 U.S.C. § 1915A

17          A.     Plaintiff's Allegations

18       Plaintiff filed his complaint while incarcerated at the California Institution for Men (CIM),

19    in Chino (San Bernardino County),[1] challenging conditions of his confinement when previously

20    incarcerated at Avenal State Prison in Kings County.  Plaintiff avers that he is disabled, "with a

21    permanent head injury and hearing impairment." ECF No. 1 at 6.  Supporting exhibits indicate

22    that plaintiff suffered head injuries following a 1999 altercation with another inmate, resulting in

23    left side hearing loss and intermittent numbness on the left side of his face. Id. at 19-20 (Ex. C).

24       Plaintiff alleges that he contracted Pulmonary Coccidioidomycosis ("Valley Fever"),

25    when previously housed at Avenal State Prison, prior to August 2013.  Valley Fever is a fungal

26    lung disease caused by the inhalation of spores endemic to desert soils, including California's San

27

28    [1]  Plaintiff refers to CIM as "Chino State Prison."

Joaquin Valley.  Plaintiff alleges that when he initially complained of joint aches and muscle spasms, the only relief provided by medical staff was issuance of a lower bunk chrono.  Plaintiff's evidence pertinent to this period include the following medical records (Ex. A,[2] ECF No. 1 at 13-7):

- September 22, 2010 "Coccidioidal Serology Report," in which the "Findings establish current illness as a primary coccidioidal infection as yet well focalized."  ECF No. 1 at 14.

- October 15, 2010 ""Coccidioidal Serology Results," construed as follows, id. at 13:

> His serum of 8 OCt is positive for coccidioidal CF (IgG) by immunodiffusion and it is negative by complement fixation. Serologically, his coccidioidal infection still appears to be of limited extent.   [Please advise] on the patient's clinical status.

- October 8, 2010 chest x-rays revealing in pertinent part, id. at 15:

> There is patch density in the right lower lobe which may be consistent with the history of cocci. . . . Right lower lobe infiltrate.  Follow-up suggested.

On August 1, 2013, plaintiff was transferred to CIM.  There he was told by correctional staff that Avenal prisoners who contracted Valley Fever were being transferred to CIM for treatment.  On August 8, 2013, plaintiff was seen by CIM physician Dr. Christopher Pollick for a Chronic Care Followup Visit for, among other things, a "[h]istory of pulmonary coccidioidomycosis."  ECF No. 1 at 17 (Ex. A).  Dr. Pollick's "Chronic Care Followup/Progress Note" provides in pertinent part, id.:

> Regarding his coccidioidomycosis, apparently the patient was initially diagnosed 09/14/2010.  Since that time two negative titers, 01/15/2010 IgG positive but less than 1:2 and on 01/26/2011 he had a negative titer and a negative IgG.  A chest x-ray was negative 12/20/2010.  His fluconazole [antifungal used to treat Valley Fever] was stopped in March 2011 so that patient has been off fluconazole now for over two years.  He denies any cough, night sweats, weight loss, fever.

---

[2]  Although plaintiff references his attachments as "Appendices," the court uses the more appropriate "Exhibits" designation.

. . . EXTREMTITIES: No edema, cyanosis or clubbing. MUSCULOSKELETAL: . . . [H]e said that he has had problems [with] chronic joint pain since having the coccidioidomycosis. All of his joints were without deformity, warmth, redness or decreased range of motion. He gets up and down easily from a chair that is 18 inches off the floor. He does this smoothly and without outward signs of discomfort such as grimace or groan. NEUROLOGIC: Alert and oriented x 4. No focal deficits in strength or sensation noted. Gait is symmetric, not antalgic. He exhibits no signs of ataxia.

Also on August 8, 2013, plaintiff submitted a CDCR 22 requesting that, in addition to pain meds, he be provided with a lower bunk chrono and referral to an optometrist. ECF No. 1 at 18 (Ex. B).

Plaintiff alleges that Dr. Pollick failed to provide him with appropriate treatment or referral to a specialist, instead providing only "IBU profein" for his joint aches and muscle spasms after plaintiff filed an Inmate Appeal. Id. at 5. Plaintiff provides a copy of a January 27, 2014 prescription from Dr. Pollick for 600 mg Ibuprofen, to be taken three times a day "as needed for pain." Id. at 16. Plaintiff alleges that his complaints to CIM medical staff of chronic joint aches and muscle spasms resulted only in a delayed prescription for ibuprofen. Id. at 5. Plaintiff avers that "Chino [CIM] medical staff like Avenal medical staff failed to document plaintiff's verbal complaints or answer a request for interview when plaintiff complained about the joint aches and muscles spasms that continue today." Id.

Plaintiff requested a review of his medical record, which he examined on February 26, 2014. Plaintiff alleges he then confirmed he was infected with Valley Fever and immediately submitted a CDC-602 Medical Appeal. Id. at 5. This appeal was exhausted through the Director's Level with a finding that plaintiff's tests for Valley Fever were negative, as set forth below, see id. at 34-7 (Ex. E); see also ECF No. 8 at 11-4 (Ex. D):

• First Level Review, issued April 1, 2014, notes that plaintiff's appeal was received on February 28, 2014. Dr. Pollick interviewed plaintiff on March 21, 2014. In pertinent part, plaintiff sought appropriate medical care for Valley Fever. The response provides that "you have had multiple coccidioidomycosis (valley fever) tests done in the past year. All indicate that you are not infected and do not require treatment." ECF No. 1 at 34. Plaintiff also sought "medical care for life" and damages, both of which were denied

because outside the scope of the appeals process.  The appeal was partially granted.

• Second Level Review, which denied plaintiff's appeal on June 6, 2014, provides in pertinent part, id. at 35:

> In reviewing your request supervising medical staff has determined that Dr. Pollick responded to your medical appeal in an appropriate manner. . . . [T]he CIM Medical Department is concerned for your health care issues and will continue to provide care and treatment as needed.  Please be assured your physician will follow your case and make recommendations accordingly.   If a future evaluation produces a different diagnosis or if your condition changes, an adjustment may be considered.

• Third Level Review, which denied plaintiff's appeal on September 10, 2014, provides in pertinent, id. at 36-7:

> • You have received ongoing Primary Care Provider (PCP) monitoring, evaluation, and treatment for your various health care issues.
>
> • You are a patient enrolled in the Chronic Care Program (CCP); you will continue to receive the proper care and management of your conditions consistent with your physician's orders.
>
> • You are receiving medical treatment which has been deemed medically necessary by your PCP based on clinical evaluations, diagnostic testing, and policy and procedures.
>
> • Your current medication profile indicates an active prescription for pain management medication.
>
> • You have been continuously monitored and appropriately screened for valley fever symptoms.
>
> • You were seen by your PCP on March 21, 2014.  You were advised that based on your current titer readings, you were not in need of treatment related to valley fever.  You were education on your condition, and advised that another titer would be ordered.  You were scheduled for CCP followup, to include a review of your laboratory work.
>
> • Laboratory testing was completed on March 26, 2014; results indicated that your serum was negative for valley fever.
>
> • You were seen by your PCP on April 14, 2014; the results of your titer readings from March 26, 2014 were reviewed with you.  The need to repeat testing was determined unnecessary unless you become symptomatic.   The treatment plan was discussed with you.  You indicated an understanding of the information provided.

- You have had several PCP and Registered Nurse encounters beyond April 14, 2014; continued concerns related to your joint aches, muscle spasms, and numbness are not documented in the visit notes. . . .

Based on this information you have been evaluated, treated, monitored, educated and are receiving appropriate medical treatment along with medication commensurate with the community standards and set forth by your PCP.  There was no documentation to indicate you were subjected to any deliberate indifference. . . .

The complaint broadly names as defendants California Governor Jerry Brown; former California Governor Arnold Schwarzenegger; James Hartley, former Warden of Avenal State Prison, and his successor; Tim Perez, former Warden of CIM, and his successor; the Director of CDCR; "Prison officials;" "State Senators;" and "Doe Defendants 1 to 100."  ECF No. 1 at 1.

Plaintiff alleges that "[t]he State of California, named Defendant's [sic] individually and in concert knew about the Cocci disease infestation at Avenal State Prison, but authorized and enforced an unwritten policy, procedure and practice to incarcerate Plaintiff a disabled person at Avenal State Prison under color or state law . . . and others similarly situated. . . . [Defendants] conspired in concert under color of state law to commit an unlawful civil conspiracy when inflicting Plaintiff with a biological chemical weapon, and a terrorist act, . . . knowing that the disease causes cruel and unusual punishment[.]"  ECF No. 1 at 5-6.  Plaintiff invokes the Geneva Convention and contends that Governor Brown continued to authorize prisoner incarceration at Avenal despite knowing about and covering up the inhumane punishment this inflicted.  Id. at 6. Plaintiff contends he did not receive appropriate medical treatment despite the fact his medical records show he "was in fact infected with the Cocci disease at Avenal State Prison" and thus that "Defendant's [sic], and each of them, were deliberately indifferent to Plaintiff's health and safety[.]"  Id. at 7.

With the exception of Governor Brown, plaintiff makes no specific charging allegations against any other defendant.  Plaintiff explains that he "is ignorant of the names and capacities of some of the Defendant's [sic] sued here, and that [he] will amend this complaint to allege their true names and capacities when ascertained."  Id.

////

7

B.   Plaintiff's Requested Relief

Plaintiff seeks damages in the amount of ten million dollars based on his allegations that defendants acted with deliberate indifference by incarcerating him at Avenal State Prison despite knowing that such placement put prisoners at heightened risk for contracting Valley Fever; denying plaintiff adequate medical care for his joint aches and muscle spasms allegedly resulting from plaintiff's Valley Fever; and discriminating against plaintiff based on his disabilities.  The complaint seeks the following injunctive relief:  referral to a new medical specialist for treatment of plaintiff's alleged Valley Fever symptoms; adequate medical care, including medical care for life to treat plaintiff's ongoing pain and suffering; an order of this court enjoining defendants from re-incarcerating plaintiff at Avenal or another prison in the Cocci endemic region; and an order directing defendants not to retaliate against plaintiff for bringing this action.  See ECF No. 1 at 4, 7-9, 11.

C.   Screening Under 28 U.S.C. § 1915A

For the reasons that follow, this court has determined that plaintiff's complaint fails to state a cognizable claim.  Plaintiff will be granted leave to file a First Amended Complaint, subject to the limitations set forth below.

1.   Class Action Claims Noncognizable

Although plaintiff asserts that he is bringing this case on behalf of himself and other similarly situated prisoners, plaintiff's putative class allegations are not cognizable.  Class action plaintiffs must be represented by counsel.  See Fed. R. Civ. P. 23(g).  "A litigant appearing in propria persona has no authority to represent anyone other than himself."  Russell v. United States, 308 F.2d 78, 79 (9th Cir. 1962); see also McShane v. United States, 366 F.2d 286, 288 (9th Cir. 1966) (privilege to appear without counsel is personal to the litigant).  "It is plain error to permit [an] imprisoned litigant who is unassisted by counsel to represent his fellow inmates in a class action."  Oxendine v. Williams, 509 F.2d 1405, 1407 (4th Cir. 1975).

For these reasons, plaintiff's class action allegations are dismissed without leave to amend.  Plaintiff may proceed in this action only on cognizable individual claims.

////

1

## 2.     Conspiracy Claims Noncognizable

Plaintiff broadly alleges that all defendants conspired to violate his constitutional rights, e.g., that the defendants "conspired in concert under color of state law to commit an unlawful civil conspiracy when inflicting Plaintiff with a biological chemical weapon, and a terrorist act, when authorizing Avenal State Prison to incarcerate Plaintiff and other similarly situated in a Cocci epidemic area, knowing the disease causes cruel and unusual punishment[.]"  ECF No. 1 at 6.  Plaintiff also generally alleges that all defendants acted in concert to deny him adequate medical care.

A conspiracy claim brought under Section1983 requires proof of "'an agreement or 'meeting of the minds' to violate constitutional rights," Franklin v. Fox, 312 F.3d 423, 441 (9th Cir. 2001) (quoting United Steel Workers of Amer. v. Phelps Dodge Corp., 865 F.2d 1539, 1540-41 (9th Cir.), cert. denied, 493 U.S. 809 (1989)), as well as an "actual deprivation of constitutional rights resulting from the alleged conspiracy," Hart v. Parks, 450 F.3d 1059, 1071 (9th Cir. 2006) (quoting Woodrum v. Woodward County, Okla., 866 F.2d 1121, 1126 (9th Cir. 1989)).  "'To be liable, each participant in the conspiracy need not know the exact details of the plan, but each participant must at least share the common objective of the conspiracy.'"  Franklin, 312 F.3d at 441 (quoting United Steel Workers, 865 F.2d at 1541).  To state a cognizable conspiracy claim, a plaintiff must plausibly allege that defendants made a specific agreement to violate plaintiff's constitutional rights, and that an identified overt act was done in furtherance of the conspiracy.  Sykes v. State of California, 497 F.2d 197, 200 (9th Cir. 1974); see also Iqbal, 556 U.S. at 678.

Plaintiff's general conspiracy allegations are insufficient to support a claim that any of the defendants engaged in a conspiracy to violate plaintiff's constitutional rights.  Nor do plaintiff's allegations support any reasonable inference of coordinated unlawful intent by two or more defendants, precluding a potentially cognizable amended conspiracy claim.

Therefore, plaintiff's conspiracy allegations are dismissed without leave to amend.

////

////

9

1

### 3.     All Defendants Must be Dismissed

2      The complaint broadly names as defendants California Governor Jerry Brown; former

3  California Governor Arnold Schwarzenegger; James Hartley, former Warden of Avenal State

4  Prison, and his successor; Tim Perez, former Warden of CIM, and his successor; the Director of

5  CDCR; "Prison officials;" "State Senators;" and "Doe Defendants 1 to 100." ECF No. 1 at 1.

6      Plaintiff has made no specific charging allegations against *any* of these defendants. A

7  complaint that fails to identify the specific acts of a defendant who allegedly violated plaintiff's

8  constitutional rights fails to meet the notice requirements of Federal Rule of Civil Procedure 8(a).

9  Hutchinson v. United States, 677 F.2d 1322, 1328 n.5 (9th Cir. 1982).  "A person 'subjects'

10 another to the deprivation of a constitutional right, within the meaning of [S]ection 1983, [only] if

11 he does an affirmative act, participates in another's affirmative acts or omits to perform an act

12 which he is legally required to do that causes the deprivation of which complaint is made."

13 Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978); see also Leer v. Murphy, 844 F.2d 628, 633

14 (9th Cir.1988) ("The inquiry into causation must be individualized and focus on the duties and

15 responsibilities of each individual defendant whose acts or omissions are alleged to have caused a

16 constitutional deprivation.") (citations omitted.)  In the absence of specific charging allegations

17 against *any* defendant, all putative defendants must be dismissed.  Should plaintiff file an

18 amended complaint, he must make specific charging allegations against each named defendant,

19 and adhere to the following additional requirements.

20     Naming general categories of putative defendants – "Prison officials," "State Senators," –

21 is disallowed.  Additionally, naming "Doe" defendants is disfavored in the Ninth Circuit.  See

22 Gillespie v. Civiletti, 629 F.2d 637, 642 (9th Cir. 1980).  Should plaintiff later identify a Doe

23 defendant, against whom he can allege a cognizable claim, he may seek leave of court to add the

24 named defendant in a further amended complaint.  See Wakefield v. Thompson, 177 F.3d 1160,

25 1163 (9th Cir. 1999); Brass v. County of Los Angeles, 328 F.3d 1192, 1195-98 (9th Cir. 2003).

26     Naming prison wardens and their successors, and the director of CDCR, is independently

27 problematic.  A supervisor may not be held liable for the actions of subordinates under a

28 respondeat superior theory, because every defendant is liable only for his or her own misconduct.

1  In plain English, just being a supervisor does not make someone legally responsible for the

2  misconduct of people he or she supervises.  Iqbal, 556 U.S. at 676-77; Ewing v. City of Stockton,

3  588 F.3d 1218, 1235 (9th Cir. 2009).  Supervisors may be named as defendants only upon

4  allegations that plausibly assert they individually "participated in or directed the violations, or

5  knew the violations and failed to act to prevent them."  Taylor v. List, 880 F.2d 1040, 1045

6  (9th Cir. 1989); accord Starr v. Baca, 652 F.3d 1202, 1205–08 (9th Cir. 2011); Corales v.

7  Bennett, 567 F.3d 554, 570 (9th Cir. 2009); Preschooler II v. Clark County, 479 F.3d 1175, 1182

8  (9th Cir. 2007); Harris v. Roderick, 126 F.3d 1189, 1204 (9th Cir. 1997).

9        Plaintiff's general allegations against the current and former state governors also fail.

10  "[F]ederal courts are barred by the Eleventh Amendment from awarding damages against state

11  officials acting in their official capacities."  Snow v. McDaniel, 681 F.3d 978, 991 (9th Cir.

12  2012).  Although the Eleventh Amendment does not bar a claim for prospective injunctive relief

13  against state officials in their official capacities, Kentucky v. Graham, 473 U.S. 159, 167 n.14

14  (1985), the state official must have authority to implement the requested relief.  In the instant

15  case, a correctional officer having the authority to implement appropriate prospective injunctive

16  relief, not the state governor, would be a proper defendant.

17                  4.     Eighth Amendment Deliberate Indifference Claims

18                  a.     General Legal Standards

19        "[D]eliberate indifference to serious medical needs of prisoners constitutes the

20  unnecessary and wanton infliction of pain, proscribed by the Eighth Amendment.  This is true

21  whether the indifference is manifested by prison doctors in their response to the prisoner's needs

22  or by prison guards in intentionally denying or delaying access to medical care or intentionally

23  interfering with the treatment once prescribed."  Estelle v. Gamble, 429 U.S. 97, 104-05 (1976)

24  (internal citations, punctuation and quotation marks omitted).  "Prison officials are deliberately

25  indifferent to a prisoner's serious medical needs when they 'deny, delay or intentionally interfere

26  with medical treatment.'"  Wood v. Housewright, 900 F.2d 1332, 1334 (9th Cir. 1990) (quoting

27  Hutchinson v. United States, 838 F.2d 390, 394 (9th Cir. 1988)).

28        "In the Ninth Circuit, the test for deliberate indifference consists of two parts.  First, the

1  plaintiff must show a serious medical need by demonstrating that failure to treat a prisoner's

2  condition could result in further significant injury or the unnecessary and wanton infliction of

3  pain.  Second, the plaintiff must show the defendant's response to the need was deliberately

4  indifferent.  This second prong ... is satisfied by showing (a) a purposeful act or failure to respond

5  to a prisoner's pain or possible medical need and (b) harm caused by the indifference." Jett v.

6  Penner, 439 F.3d 1091, 1096 (9th Cir. 2006) (internal citations, punctuation and quotation marks

7  omitted); accord, Wilhelm v. Rotman, 680 F.3d 1113, 1122 (9th Cir. 2012); Lemire v. CDCR,

8  726 F.3d 1062, 1081 (9th Cir. 2013).

9        Hence, to state a claim for deliberate indifference to serious medical needs, a prisoner

10  must allege that a prison official "kn[ew] of and disregard[ed] an excessive risk to inmate health

11  or safety; the official must both be aware of the facts from which the inference could be drawn

12  that a substantial risk of serious harm exists, and he must also draw the inference." Farmer v.

13  Brennan, 511 U.S. 825, 837 (1994).  Evidence must exist to show the defendant acted with a

14  "sufficiently culpable state of mind." Wilson v. Seiter, 501 U.S. 294, 297 (1991) (citing Estelle, ,

15  429 U.S. at 104).

16        More narrowly, a "failure to protect" claim under the Eighth Amendment requires a

17  showing that "the official [knew] of and disregard[ed] an excessive risk to inmate . . . safety."

18  Farmer, 511 U.S. at 837.  Under a failure to protect claim, "[w]hether a prison official had the

19  requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual

20  ways, including inference from circumstantial evidence, ... and a factfinder may conclude that a

21  prison official knew of a substantial risk from the very fact that the risk was obvious." Id. at 842

22  (citations omitted).  Prison officials may avoid liability by demonstrating "that they did not know

23  of the underlying facts indicating a sufficiently substantial danger and that they were therefore

24  unaware of a danger, or that they knew the underlying facts but believed (albeit unsoundly) that

25  the risk to which the facts gave rise was insubstantial or nonexistent." Id. at 844.  Thus, liability

26  may be avoided by presenting evidence that the defendant lacked knowledge of the risk and/or

27  that his response was reasonable in light of all the circumstances. Id. at 844-45; see also Wilson,

28  501 U.S. at 298.

b.      Legal Standards Specific to Valley Fever Cases

Due to the evolving understanding of Valley Fever, courts in this district have been reticent to attribute to correctional and other state officials the knowledge of a substantial risk of harm that is required to sustain an Eighth Amendment claim.  As this court previously noted, "[c]ourts of this district have held that confinement in a location where Valley Fever is present does not, in and of itself, satisfy the objective element of an Eighth Amendment claim, i.e., that the condition poses an excessive risk of harm."  Layton v. Knipp, 2013 WL 5348153, at *3, 2013 U.S. Dist. LEXIS 136086, at *7 (E.D. Cal. Sept. 23, 2013) (Case No. 2:13-cv-1618 AC P) (Citing Smith v. Yates, No. 1:10-cv-1088 AWI GSA, 2012 WL 1498891, *2 (E.D.Cal. Apr.27, 2012) (which cited King v. Avenal State Prison, No. 1:07-cv-1283 AWI GSA, 2009 WL 546212, *4 (E.D.Cal.Mar.4, 2009) ("[T]o the extent that Plaintiff is attempting to pursue an Eighth Amendment claim for the mere fact that he was confined in a location where Valley Fever spores existed which caused him to contract Valley Fever, he is advised that no courts have held that exposure to Valley Fever spores presents an excessive risk to inmate health.")).

Nevertheless, a plaintiff's unique health challenges may support the first element of a deliberate indifference claim.  As this court previously noted, Layton v. Knipp, supra, 2013 WL 5348153, at *3, 2013 U.S. Dist. LEXIS 136086, at *8:

> Courts have, however, deemed the first prong of an Eighth Amendment claim satisfied where the plaintiff identified a factor responsible for either increasing the risk of contraction of Valley Fever or the severity of infection.  See, e.g., Owens v. Trimble, No. 1:11-cv-01540 LJO MJS, 2012 WL 1910102, *2 (E.D. Cal. May 25, 2012) (asthma); Whitney v. Walker, No. 1:10–cv–1963 DLB, 2012 WL 893783, *2-4 (E.D. Cal. Mar.15, 2012) (immune system compromised by cancer); Thurston v. Schwarzenegger, No. 1:08–cv–0342 AWI SMS, 2008 WL 2129767, *2 (E.D. Cal. May 21, 2008) (various medical conditions, including asthma, and additionally race); see also Plata v. Brown, No. C01–1351 TEH, 2013 WL 3200587, *7 n.10 & *14 (N.D. Cal. June 24, 2013) (finding that certain groups of medically high risk inmates are at an increased risk of harm from Valley Fever infection and therefore should be excluded from Pleasant Valley State Prison and Avenal State Prison).

Another court in this district court recently defined this legal right as follows, Allen v. Kramer, 2016 WL 4613360, at *6, 2016 U.S. Dist. LEXIS 115024, at *16 (E.D. Cal. Aug. 17, 2016) (Case

13

1   No. 1:15-cv-01609 DAD MJS PC) (screening order):

2
> Plaintiff has a right to be free from exposure to an environmental
3   hazard that poses an unreasonable risk of serious damage to his
> health whether because the levels of that environmental hazard are
> too high for anyone in Plaintiff's situation or because Plaintiff has a
4   particular susceptibility to the hazard.

5   Accord, Williams v. Biter, 2017 WL 431353 at *12, 2017 U.S. Dist. LEXIS 13374, at *36-7 (E.

6   D. Cal. Jan. 31, 2017) (Case No. 1:14-cv-02076 DAD EPG PC), report and recommendation

7   pending before the district judge as of Feb. 27, 2016.

8          Nevertheless, because the law in this area remains unsettled, it appears that most courts in

9   this district have found defendants entitled to qualified immunity due to the absence of a clearly

10  established right that would support a finding that any defendant harbored a sufficiently culpable

11  state of mind.  The most significant of these cases is Smith v. Schwarzenegger, 137 F. Supp. 3d

12  1233, 1241 (E.D. Cal. 2015), a consolidated class action, which is pending on appeal before the

13  Ninth Circuit, tentatively scheduled for oral argument in May 2017.  The district court in Smith

14  found defendants entitled to qualified immunity "because the applicable law remains unsettled

15  and unclear," despite prisoner allegations of individual susceptibility to contracting Valley Fever

16  due to advanced age, ethnicity, and/or compromised immune systems.  Accord, Boyce v. Fox,

17  2017 WL 404589, at *12, 2017 U.S. Dist. LEXIS 12621, at *33 (E. D. Cal. Jan. 30, 2017) (Case

18  No. 2:14-cv-1743 KJM KJN P), report and recommendation pending before the district judge as

19  of Feb. 27, 2017;  Wiseman v. Cate, 2015 WL 8207341, at *5-7, 2015 U.S. Dist. LEXIS 163851,

20  at *13-7 (E.D. Cal. Dec. 7, 2015) (Case No. 1:14-cv-00831 DAD SAB PC), report and

21  recommendation pending before the district judge as of Feb. 27, 2017; but see, Williams, supra,

22  2017 WL 431353 at *12-3, 2017 U.S. Dist. LEXIS 13374, at *37-41 (rejecting qualified

23  immunity defense without prejudice due to the early stage of the proceedings).

24                          c.        Dismissal with Leave to Amend

25         The undersigned is persuaded that the instant case, like Williams, is at a sufficiently early

26  stage to permit plaintiff the opportunity to attempt to remedy the deficiencies of his complaint, if

27  possible, subject to these evolving legal authorities.  Plaintiff may address the circumstances of

28  both his alleged exposure to/contraction of Valley Fever and his related medical treatment.  Both

14

1    matters will depend on evidence that plaintiff in fact contracted Valley Fever, and that his

2    symptoms are consistent with the illness, conclusions that appear unsupported by the present

3    record.[3]  Assuming plaintiff can plausibly allege these matters, he may attempt to make the

4    following claims.  Concerning plaintiff's exposure to/contraction of Valley Fever, plaintiff must

5    plausibly allege that all inmates at Avenal State Prison were exposed to an unreasonable risk of

6    serious damage to their health and/or that plaintiff had a particular susceptibility to contracting

7    Valley Fever, and that specific defendant(s), despite awareness of these risk(s), directed plaintiff's

8    placement and/or retention at Avenal.  Concerning plaintiff's medical treatment, plaintiff must

9    plausibly allege that a specific medical provider or providers failed to treat plaintiff's Valley

10   Fever illness and symptoms despite knowing that such failure would result in further significant

11   injury to plaintiff.

12                  5.      Disability Discrimination

13          Plaintiff generally alleges discrimination on the basis of his disabilities, referencing his

14   permanent head injury and impaired hearing, as well as his alleged Valley Fever symptoms.

15          Plaintiff is informed that Title II of the Americans with Disabilities Act (ADA) provides that

16   "no qualified individual with a disability shall, by reason of such disability, be excluded from

17   participation in or be denied the benefits of the services, programs, or activities of a public entity, or

18   be subject to discrimination by such entity."  42 U.S.C. § 12132.  Title II applies to inmates within

19   state prisons.  Pennsylvania Dept. of Corrections v. Yeskey, 524 U.S. 206 (1998); see also Armstrong

20   v. Wilson, 124 F.3d 1019, 1023 (9th Cir. 1997); Duffy v. Riveland, 98 F.3d 447, 453-56 (9th Cir.

21   1996).  "To establish a violation of Title II of the ADA, a plaintiff must show that (1) [he] is a

22   qualified individual with a disability; (2) [he] was excluded from participation in or otherwise

23   discriminated against with regard to a public entity's services, programs, or activities; and (3) such

24   exclusion or discrimination was by reason of [his] disability."  Lovell v. Chandler, 303 F.3d 1039,

25   1052 (9th Cir. 2002).

26

27   _____

[3]  The court notes plaintiff's assertion, outside his complaint, that his test results for Valley fever
28   reflect false negatives.  See ECF No. 10 at 4.  In an amended complaint, such assertion must be
     plausibly alleged based on specific supporting facts.

Plaintiff's general allegations do not state a claim for discrimination under the ADA. Although plaintiff alleges that he is a qualified individual with a disability under the ADA, he does not allege that he was improperly excluded from participation in, or otherwise denied the benefits of, a prison service, program, or activity on the basis of his disability.  Plaintiff may, in an amended complaint, attempt to state a cognizable claim under the ADA.

V.   Leave To File First Amended Complaint

For the foregoing reasons, this court finds that plaintiff's complaint fails to state a cognizable claim against any defendant.  Accordingly, plaintiff's complaint will be dismissed with leave to file a First Amended Complaint, subject to the standards set forth in this order.  A First Amended Complaint will also be screened by the court pursuant to 28 U.S.C. § 1915A.

A First Amended Complaint must clearly identify each defendant and their respective allegedly unconstitutional conduct.  The charging allegations must be clearly set forth so that each defendant has fair notice of the claims against him or her.  The allegations must be set forth in numbered paragraphs.  Fed. R. Civ. P. 10(b).  Plaintiff may join multiple claims if they are all against a single defendant.  Fed. R. Civ. P. 18(a).  If plaintiff has more than one claim based upon separate transactions or occurrences, the claims must be set forth in separate paragraphs.  Fed. R. Civ. P. 10(b).  The federal rules contemplate brevity.  Fed. R. Civ. P. 8(a); Galbraith v. County of Santa Clara, 307 F.3d 1119, 1125 (9th Cir. 2002).  Plaintiff's claims must be set forth in short and plain terms, simply, concisely and directly.  Swierkiewicz v. Sorema N.A., 534 U.S. 506, 514 (2002) ("Rule 8(a) is the starting point of a simplified pleading system, which was adopted to focus litigation on the merits of a claim.").

An amended complaint must be complete in itself without reference to any prior pleading. Local Rule 15-220; see Loux v. Rhay, 375 F.2d 55, 57 (9th Cir. 1967).  If plaintiff files a First Amended Complaint, his original complaint will be superseded.  By signing the First Amended Complaint, plaintiff certifies he has evidentiary support for his allegations and that his claims are warranted by existing law.  Fed. R. Civ. P. 11.

////

////

16

VI.     Plaintiff's Motion to Submit Additional Evidence and Add Parties

Plaintiff has filed a motion to submit additional evidence and to add parties.  See ECF No. 10.  This motion is granted only in limited part.

Plaintiff requests that the court consider the following new evidence:

• Exhibit A:  Asserted to be an "Executive Summary," dated January 12, 2007, showing "that the majority of California State Prisons are located in regions endemic for the soil fungus Coccidioidomycosis, acknowledged and documented by the California Department of Health Services in 2005, 3 years prior to Plaintiff being housed at Avenal State Prison."  ECF No. 10 at 3; see also id. at 7-32 (Ex. A)

• Exhibit B:  February 4, 2010 order signed by U.S. District Judge Richard Seeborg, Northern District of California, in a case filed by plaintiff's mother (Grace Honesto) against the State of California and former Governor Schwarzenegger, in which she asserted that her son's constitutional rights are violated by his continuing incarceration, including the physical assault and permanent injury he sustained.  See ECF No. 10 at 33-6 (Ex. B).  Judge Seeborg found that plaintiff's mother did not have standing to pursue plaintiff's rights, and that plaintiff was independently pursuing his own rights, and therefore granted defendants' motion to dismiss. Plaintiff now avers that his mother was attempting to vindicate his right to be free of pain and suffering inflicted by prison officials and other inmates.  He avers that "several months after Plaintiff's mother was denied Plaintiff was infected with the Cocci desease [sic] at Avenal State Prison," providing support for his instant request that his mother and the Honesto Estate be added as plaintiffs herein in the event of plaintiff's death from the disease. Id. at 5.

• Exhibit C:  This exhibit contains two letters written by plaintiff's mother.  The first letter, dated September 9, 1998, is addressed to the Warden of Folsom State Prison, where plaintiff was then incarcerated, and sets forth the law enforcement jobs and credentials of several members of plaintiff's immediate and extended family.  See ECF No. 10 at 37-38.  The second letter, dated May 10, 2001, is addressed to the Office of the Inspector General and raises concerns about the conditions of plaintiff's incarceration at that time at Corcoran State Prison.  Id. at 39-40. Plaintiff now relies on these letters to assert that his family members are "pillars of the Community, Correctional and Peace Officers in the State of California, who are willing and able to comply with the rules of court if plaintiff's deteriorating health, continued medical problems and Cocci desease [sic] or plaintiff's death obstruct from prosecuting his claims."  Id. at 5.

Plaintiff relies on Exhibit A in support of his putative deliberate indifference claims, to assert that correctional officials knew of the substantial risks to San Joaquin Valley inmates posed

17

1    by Valley Fever before plaintiff was transferred to Avenal State Prison.  Although Exhibit A

2    lacks specific identification and authentication, if these matters are corrected the document may

3    be relevant to plaintiff's potential claims.  Therefore, plaintiff may attach a copy of this document

4    as an exhibit to his First Amended Complaint.

5         Exhibits B and C are irrelevant to the merits of this action.  No one other than plaintiff has

6    standing to pursue this action.  "Standing under Article III of the Constitution requires that an

7    injury be concrete, particularized, and actual or imminent; fairly traceable to the challenged

8    action; and redressable by a favorable ruling."  Monsanto Co. v. Geertson Seed Farms, 561 U.S.

9    139, 149 (2010) (citation omitted); see also Lujan v. Defenders of Wildlife, 504 U.S. 555, 561

10   (1992).  "In the ordinary course, a litigant must assert his or her own legal rights and interests,

11   and cannot rest a claim to relief on the legal rights or interests of third parties.  This fundamental

12   restriction on [federal court] authority admits of certain, limited exceptions.  We have recognized

13   the right of litigants to bring actions on behalf of third parties, provided three important criteria

14   are satisfied:  The litigant must have suffered an 'injury in fact,' thus giving him or her a

15   'sufficiently concrete interest' in the outcome of the issue in dispute; the litigant must have a

16   close relation to the third party; and there must exist some hindrance to the third party's ability to

17   protect his or her own interests."  Powers v. Ohio, 499 U.S. 400, 410-11 (1991) (citations and

18   internal quotation marks omitted).

19        Plaintiff's mother and other family members fail to meet these criteria.  Plaintiff asserts no

20   more than a theoretical inability to pursue this action.  Moreover, assuming this action proceeds

21   on cognizable claims, and in the unlikely event of plaintiff's incapacitation or death, one of his

22   family members may move the court to proceed on plaintiff's behalf as his guardian ad litem or

23   survivor.  Absent these circumstances, none of plaintiff's family members (nor the family estate)

24   has standing to be another plaintiff in this action.  For these reasons, plaintiff's motion to submit

25   Exhibits B & C is denied, and his request to join additional parties in this action is also denied.

26   ////

27   ////

28   ////

18

VII.    Plaintiff's Motion For Preliminary Injunctive Relief

Plaintiff has filed a separate motion requesting preliminary injunctive relief which mirrors the injunctive relief sought pursuant to his complaint.  Indeed, plaintiff's brief in support of this motion, see ECF No. 8 at 4-6, is identical to that included with his complaint, see ECF No. 1 at 9-11.  The immediate relief sought by plaintiff is a court order enjoining defendants from transferring him back to prison in a Cocci endemic area; prohibiting defendants from retaliating against plaintiff for bringing this action; and directing defendants to refer plaintiff to a medical specialist.

A.    Legal Standards

The court construes plaintiff's motion as an ex parte request for a temporary restraining order.  Under Rule 65, Federal Rules of Civil Procedure, "[t]he court may issue a temporary restraining order without written or oral notice to the adverse party" only if "specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition."  Fed. R. Civ. P. 65(b)(1).  Obtaining ex parte relief under Rule 65 is limited to situations where notice to the adverse party would likely prove useless.  See Reno Air Racing Ass'n v. McCord, 452 F.3d 1126, 1130 (9th Cir. 2006) (citing cases).  The legal standards for obtaining a temporary restraining order are essentially identical to those for obtaining a preliminary injunction.  See Cal. Indep. Sys. Operator Corp. v. Reliant Energy Servs., Inc., 181 F. Supp. 2d 1111, 1126 (E.D. Cal. 2001); Lockheed Missile & Space Co., Inc. v. Hughes Aircraft Co., 887 F. Supp. 1320, 1323 (N.D. Cal. 1995).

"The sole purpose of a preliminary injunction is to 'preserve the status quo ante litem pending a determination of the action on the merits.'"  Sierra Forest Legacy v. Rey, 577 F.3d 1015, 1023 (9th Cir. 2009) (quoting L.A. Memorial Coliseum Comm'n v. NFL, 634 F.2d 1197, 1200 (9th Cir.1980)).  In evaluating the merits of a motion for preliminary injunctive relief, the court considers whether the movant has shown that "he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest."  Winter v. Natural Resources

19

1   Defense Council, 555 U.S. 7, 20 (2008); accord Stormans, Inc. v. Selecky, 586 F.3d 1109, 1127

2   (9th Cir. 2009).  "At a minimum, a plaintiff seeking preliminary injunctive relief must

3   demonstrate that it will be exposed to irreparable harm.  Speculative injury does not constitute

4   irreparable injury sufficient to warrant granting a preliminary injunction.  A plaintiff must . . .

5   demonstrate immediate threatened injury as a prerequisite to preliminary injunctive relief."

6   Caribbean Marine Serv. Co. v. Baldridge, 844 F.2d 668, 674 (9th Cir. 1988) (citations omitted).

7   "'[S]erious questions going to the merits' and a hardship balance that tips sharply toward the

8   plaintiff can support issuance of an injunction, assuming the other two elements of the Winter test

9   are also met."  A preliminary injunction is appropriate when a plaintiff demonstrates . . . "serious

10  questions going to the merits and a hardship balance [] tips sharply toward the plaintiff, . . .

11  assuming the other two elements of the Winter test are also met."  Alliance for the Wild Rockies

12  v. Cottrell, 632 F.3d 1127, 1132 (9th Cir.  2011).

13          An injunction against individuals who are not parties to the action is strongly disfavored.

14  Zenith Radio Corp. v. Hazeltine Research, Inc., 395 U.S. 100, 112 (1969).  Additionally, in cases

15  brought by prisoners involving conditions of confinement, any preliminary injunction "must be

16  narrowly drawn, extend no further than necessary to correct the harm the court finds requires

17  preliminary relief, and be the least intrusive means necessary to correct the harm."  18 U.S.C. §

18  3626(a)(2).

19                    B.    Analysis

20          This court finds that none of the grounds for granting preliminary injunctive relief are met

21  by the instant motion.  Most significantly, in the absence of a cognizable complaint, plaintiff is

22  unable to demonstrate that he is likely to succeed on the merits of his putative claims.  Further, in

23  the absence of a plausible showing that his medical symptoms are caused by Valley Fever,

24  plaintiff cannot show that he is likely to suffer irreparable harm in the absence of preliminary

25  relief.

26          Moreover, the specific relief sought by this motion is unavailable for the following

27  reasons.  First, there is no legal authority supporting plaintiff's request for an order directing

28  correctional officials to refrain from transferring him back to a prison located in a Cocci endemic

1    area.  Prisoners have no due process right to placement in a particular correctional facility, or to

2    prevent their transfer to other facilities.  Meachum v. Fano, 427 U.S. 215, 223-225 (1976); see

3    also Rizzo v. Dawson, 778 F.2d 527, 530 (9th Cir.1985) (prison authorities may change a

4    prisoner's "place of confinement even though the degree of confinement may be different and

5    prison life may be more disagreeable in one institution than in another" without violating the

6    prisoner's due process rights).  Nevertheless, depending on the development of the law

7    concerning California inmates and Valley Fever, and the strength of plaintiff's evidence, it is

8    possible that he may later have an Eighth Amendment claim if he is in fact transferred back to a

9    prison in a Cocci endemic area.

10          Second, this court does not issue prospective orders directing parties to refrain from

11   engaging in unconstitutional conduct.  It is well established that filing administrative grievances

12   and initiating litigation are constitutionally protected activities, and it is impermissible for prison

13   officials to retaliate against prisoners for engaging in those activities.  See Rhodes v. Robinson,

14   408 F.3d 559, 567-68 (9th Cir. 2005); see also Silva v. Di Vittorio, 658 F.3d 1090, 1104 (9th Cir.

15   2011) (prisoners retain First Amendment rights not inconsistent with their prisoner status or

16   penological objectives, including the right to file inmate appeals and the right to pursue civil

17   rights litigation).  In the absence of an alleged violation of this right, this court is without

18   authority to direct defendants to refrain from retaliating against plaintiff for bringing this action.

19          Third, in the absence of a clearly identified medical need, this court is without authority to

20   direct plaintiff's referral to a medical specialist.  Further, because plaintiff has failed to identify

21   any medical provider as a potential defendant in this action, any directive against an individual

22   not a party to this action is strongly disfavored.  Zenith Radio Corp., 395 U.S. at 112.

23          Because plaintiff has not demonstrated that he is likely to suffer imminent harm in the

24   absence of preliminary relief, the balance of equities weighs against such relief, which is also

25   unsupported by the public interest.  See Winter, 555 U.S. at 20.  For these reasons, this court

26   recommends that plaintiff's motion for preliminary injunctive relief be denied.

27   ////

28   ////

21

VII.   Conclusion

Accordingly, for the reasons set forth above, **IT IS HEREBY ORDERED** that:

1.  Plaintiff's request for leave to proceed in forma pauperis, ECF No. 6, is granted.

2.  Plaintiff is obligated to pay the statutory filing fee of $350.00 for this action.  Plaintiff is assessed an initial partial filing fee in accordance with the provisions of 28 U.S.C. § 1915(b)(1).  All fees shall be collected and paid in accordance with this court's order to the Director of the California Department of Corrections and Rehabilitation filed concurrently herewith.

3.  Plaintiff's motion to submit evidence and add parties, ECF No. 10, is granted in part and denied in part, as set forth above.

4.  Plaintiff's complaint, ECF No. 1, is dismissed with leave to amend.

5.  Within thirty days from the filing date of this order, plaintiff shall complete the attached Notice of Amendment and submit the following documents to the court:

    a.  The completed Notice of Amendment; and

    b.  A First Amended Complaint that bears the same docket number assigned to this case.

6.  Failure to timely file a First Amended Complaint in accordance with this order may result in the dismissal of this action.

7.  The Clerk of Court is directed to send plaintiff, together with a copy of this order, a blank form complaint used by prisoners in this district for pursuing a civil rights action under 42 U.S.C. § 1983.

8.  The Clerk of Court is directed to randomly assign a district judge to this action.

Further**, IT IS HEREBY RECOMMENDED** that plaintiff's motion for preliminary injunctive relief, ECF No. 8, be denied.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within **ten days** after being served with these findings and recommendations, plaintiff may file written objections with the court.  Such a document should be captioned "Objections to Magistrate Judge's Findings and

22

1    Recommendations." **Due to exigencies in the court's calendar, no extensions of time will be**

2    **granted.**[4]   The parties are advised that failure to file objections within the specified time may

3    waive the right to appeal the District Court's order.   <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir.

4    1991).

5    DATED: March 1, 2017

6    _____

7    ALLISON CLAIRE
     UNITED STATES MAGISTRATE JUDGE

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

_____

27   [4]  Plaintiff is informed that in order to obtain the district judge's independent review and preserve
     issues for appeal, he need only identify the findings and recommendations to which he objects.

28   There is no need to reproduce his arguments on the issues.

23

1

2

3

4

5

6

7

8                                UNITED STATES DISTRICT COURT

9                          FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   PETER HONESTO,                          No.  2:15-cv-0076 AC P

12                  Plaintiff,

13          v.                               NOTICE OF AMENDMENT

14   GOVERNOR JERRY BROWN, et al.,

15                  Defendants.

16

17          Plaintiff hereby submits the following document in compliance with the court's order

18   filed_____.

19          _____        First Amended Complaint

20

21   _____        _____

22   Date                                         Plaintiff

23

24

25

26

27

28

                                                 1